UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IRIC BURTON,

                         Plaintiff,                          **REPORT AND**
                                                             **RECOMMENDATION**
v.
                                                             08-CV-00093(A)(M)
NIAGARA FRONTIER TRANSPORTATION
AUTHORITY; et al.

                         Defendants.

          This action was referred to me by Hon. Richard J. Arcara to conduct "all pre-trial

matters", including "hearing and disposition of all non-dispositive motions" and to "hear and

report upon dispositive motions" (Dkt. #11). Before me are defendants' motions to dismiss the

complaint (Dkt. ##5, 8).  For the following reasons, I recommend that defendants' motions to

dismiss be GRANTED.


                                   **BACKGROUND**

          Plaintiff commenced this action by complaint filed January 31, 2007, alleging

violations of Title VII of the Civil Rights Act of 1964,  as amended, 42 U.S.C. §2000(e),

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12112-12117, and New York

State Human Rights Law ("NYHRL"), N.Y. Exec. Law §§290-297 (Dkt. #1).

          According to the complaint, plaintiff commenced his employment with the

Niagara Frontier Transportation Authority ("NFTA") in 1994 (Id. at ¶4). Plaintiff was involved

in a off-duty motor vehicle accident on July 29, 2005 and began a leave of absence (Id. at ¶19).

On April 26, 2006, plaintiff's treating physician, Andrew Matteliano, M.D., released  him to

work without restrictions (Id.).  Without plaintiff's consent, his medical records were released by

Dr. Matteliano to the NFTA's physician, Donald Jacob, M.D. (Id.).  Based upon Dr. Jacob's

review, the NFTA discharged plaintiff from his employment "on the purported ground that [he]

was unfit to perform his job duties" (Id.). Plaintiff argues that, in doing so, the NFTA violated its

agreement with the defendant International Longshoreman's Association Local Union 1949 (the

"Union").   He also argues that the Union "failed to pursue Plaintiff's meritorious grievance,

misled Plaintiff into believing that said grievance was being processed and otherwise failed to

provide to Plaintiff, a union member in good standing, fair representation" (Id.).

           On April 3, 2007 plaintiff filed an administrative complaint with the New York

State Division of Human Rights ("DHR") alleging discriminatory conduct by the NFTA based

upon sex and disability (Dkt. #1, attached DHR Determination and Order after Investigation).

The administrative complaint was dual-filed with the Equal Employment Opportunity

Commission ("EEOC"). [1] On September 14, 2007, the DHR issued a "Determination and Order

After Investigation", finding that there was "NO PROBABLE CAUSE" to believe that the NFTA

had engaged in or was engaging in the unlawful discriminatory practices complained of in the

administrative complaint. Id.  Plaintiff's administrative complaint was "ordered dismissed and

the file . . . closed.  Id.   On November 24, 2007, the EEOC issued plaintiff a "Dismissal and

Notice of Rights" letter ("right-to-sue letter") (Dkt. #1, attached EEOC right-to-sue-letter).

---

[1]        "Pursuant to a work-sharing arrangement between the EEOC and the Human Rights
Division, charges received by the Human Right Division are automatically deemed dual-filed with the
EEOC." Anderson v. Nassau County Dept. of Corrections,  2008 WL 752449, *10 (E.D.N.Y. 2008).

On May 3, 2007, plaintiff also filed a complaint with the DHR against the Union, alleging that he was "subject to unlawful discriminatory actions" for speaking out against defendant Eddie Saleh, the Union's President, and that Mr. Saleh refused to assist him with his grievance (Dkt. #15, Reply Affidavit of Susan Wheatley, Esq., Ex. A).  The DHR dismissed the complaint for lack of jurisdiction on May 4, 2007 (Id.).[2]

In lieu of answering the complaint, defendants moved to dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and (6) (Dkt. #5-1, Union's Notice of Motion; Dkt. #8, NFTA's Notice of Motion).

## DISCUSSION AND ANALYSIS

### I.      Standard of Review

Until recently, it had been well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However, last year the Supreme Court reconsidered the Conley standard in Bell Atlantic Corp. v. Twombly, ___U.S.___, 127 S. Ct. 1955, 1969 (2007), stating that "after puzzling the profession for 50 years, this famous observation has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint".

---

[2]      No right-to-sue letter arising from this complaint is included in the record before me.

The Second Circuit has interpreted <u>Twombly</u> to require "a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Iqbal v. Hasty</u>, 490 F. 3d 143, 158 (2d Cir. 2007), <u>cert</u>. <u>granted</u>, <u>Ashcroft v. Iqbal</u>, 2008 WL 336310 (2008); <u>Ross v. Bank of America, N.A. (USA)</u>, 524 F. 3d 217, 223 (2d Cir. 2008) (same).  Under this standard, a complaint may be dismissed where it fails to plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, <u>supra</u>, 127 S. Ct. at 1974.  In order to state a claim, the factual allegations "must be enough to raise a right to relief above the speculative level." <u>Id</u>.   However, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007).

## II.    Title VII and ADA claims

Defendants argue that plaintiff's Title VII and ADA claims are time-barred because he failed to file his complaint within 90 days of  receipt of the EEOC's right-to-sue letter (Dkt. #9, NFTA's Memorandum of Law, Point I; Dkt. #5-3,Union's Memorandum of Law, p. 6).[3]  Plaintiff concedes that the action was filed more than 90 days from his receipt of the right-to-sue letter, but argues that he is not pursuing an ADA or Title VII claim: "Although  Plaintiff's complaint allege [*sic*] that his rights under Title VII and the Americans with Disabilities Act

_____

[3]      The Union also argues that plaintiff's ADA and Title VII claims should be dismissed against it because plaintiff never filed a discrimination charge with the EEOC against the Union and never received a right-to-sue letter permitting him to sue the Union for discrimination (Dkt. #5-3, Union's Memorandum of Law, Point III).  However, in light of my finding that plaintiff's Title VII and ADA claims are untimely, I need not address this argument.

were violated, the essence of the factual allegation in [*sic*] Complaint make clear that  Plaintiff

has alleged a wrongful discharge by . . . defendant NFTA in violation of his rights as set forth in

the Employment Agreement between the defendant Company and defendant Local Union" (Dkt.

#13, Reply Affirmation of Louis Rosado, Esq., ¶6).  Nevertheless, because it is unclear whether

plaintiff thereby intends to abandon his ADA and Title VII claims, I will address their timeliness.

"To be timely, actions for violations of Title VII [and] the ADA . . . must be filed

within 90 days after receipt of a right to sue letter from the EEOC."  Toolan v. Board of

Education of the City of New York , 2003 WL 22015437, *2  (S.D.N.Y. 2003) (citing 42 U.S.C.

§2000e-5(f)(1); 42 U.S.C. §12117(a)).  This limit is not a jurisdictional prerequisite.  Rather, it is

a limitations period subject to equitable tolling.  See Johnson v. Al Tech Specialties Steel Corp.,

731 F. 2d 143, 146 (2d Cir. 1984).  Equitable tolling "permits courts to extend a statute of

limitations on a case-by-case basis to prevent inequity."  Chao v. Russell P. Le Frois Builder, Inc.,

291 F. 3d 219, 223 (2d Cir. 2002).

However, tolling is "only appropriate in rare and exceptional circumstances."

Smaldone v. Senkowski, 273 F. 3d 133, 138 (2d Cir. 2001), cert. denied, 535 U.S. 1017 (2002).

For example, "the 90 day time limit ought to be tolled only for reasons such as (1) the claimant

received inadequate notice, (2) there is a pending motion for appointment of counsel, (3) the

Court misled the plaintiff and as a result the plaintiff believed he had done everything required of

him, or (4) the defendant engaged in affirmative misconduct, encouraging the plaintiff to take no

action." Selmanovic v. NYSE Group, Inc.,  2007 WL 950135, *4 (S.D.N.Y. 2007).  "In the

absence of a recognized equitable consideration, the court cannot extend the limitations period by

even one day." Johnson, supra, 731 F. 2d at 146.

Although plaintiff contends that he did not receive the right-to-sue letter until October 29, 2007, he did not file his complaint until January 31, 2008, or 94 days later (Dkt. #1, ¶12). Plaintiff notes on his complaint that he was unable to file his complaint on January 30, 2008 because the court was closed due to the weather. However, even affording plaintiff the benefit of the January 30, 2008 filing date would not make his complaint timely.

Because plaintiff does not dispute that he did not file his complaint within the 90-day time period and has not set forth any basis to equitably toll this limitations period, I recommend that plaintiff's Title VII and ADA claims be dismissed. See Toolan, supra, 2003 WL 22015437 at *2 (granting motion to dismiss Title VII and ADA claims where complaint was filed 91 days after the receipt of the right-to-sue letter).

## III.    Section 301/Fair Representation Claim

Defendants argue that the court lacks subject matter jurisdiction over plaintiff's hybrid §301/ fair representation claim because there is no federal duty of fair representation by public employers such as the NFTA, and that the New York State Public Employment Relations Board has jurisdiction over a public employee's breach of duty of fair representation claim (Dkt. #5-3, Union's Memorandum of Law, Points I and II; Dkt. #15, Reply Affidavit of Susan Wheatley, Esq., ¶6). Alternatively, defendants argue that the plaintiff's claim is time barred (Dkt. #14, Reply Affirmation of W. James Schwan, Esq., ¶11; Dkt. #15, Reply Affidavit of Susan Wheatley, Esq., ¶¶7-8).

Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185 (a), provides in relevant part that "suits for violation of contracts between an employer and

a labor organization . . . may be brought in any district court of the United States having

jurisdiction of the parties, without respect to the amount in controversy or without regard to the

citizenship of the parties."   " 'When the union representing the employee in the grievance/

arbitration procedure acts in such a . . . fashion as to breach its duty of fair representation . . . an

employee may bring suit against both the employer and the union, notwithstanding the outcome

or finality of the grievance or arbitration proceeding.  Such suits are generally known as  hybrid

§301/fair representation claims.' "  Baumgart v. Stony Brook Children's Service, P.C.,  2005 WL

2179429, *4 (E.D.N.Y. 2005), aff'd, 249 Fed. Appx. 851 (2d Cir. 2007) (unpublished) (quoting

DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164 (1983)).  "The hybrid

plaintiff must prove both: (1) that the employer breached a collective bargaining agreement, and

(2) that the union breached its duty of fair representation.  If the plaintiff is unable to prove either

of his claims, the entire cause of action must fail.  Id. at *5.

       Plaintiff  argues that his complaint "clearly pleads a cause of action for a hybrid

§301/fair representation claim" , but nevertheless asks permission to amend his complaint

accordingly (Dkt. #13, Reply Affirmation of Louis Rosado, Esq., ¶7).  However, whether or not

properly alleged, there can be no such claim in this case. "Federal courts have . . . held that public

employees cannot sue their employers under the LMRA for breaching collective bargaining

agreements, and also cannot bring hybrid Section 301 claims against their unions for breach of

the duty of fair representation." Baumgart, supra,  2005 WL 2179429 at *5; see Cunningham v.

Local 30, International Union of Operating Engineers, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002)

("Courts have held that they lack subject matter jurisdiction over hybrid claims by public

employees because a public employer is not an 'employer' within the meaning of the LMRA.").

Rather, a union representing public sector employees has a duty of fair representation under the

New York Public Employees' Fair Employment Act.  See Straker v. Metropolitan Transit

Authority, 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004).

> The National Labor Relations Act ("NLRA") defines "employer" as
>
> "any person acting as an agent of an employer, directly or
> indirectly, but shall *not* include the United States or any wholly
> owned Government corporation, or any Federal Reserve Bank, *or
> any State or political subdivision thereof*" 29 U.S.C. §152(2)
> (emphasis added).[4]
>
> Plaintiff fails to dispute the Union's assertion that the NFTA is a political

subdivision of New York State.  "The NFTA was created by an act of New York's Legislature in

1967, and was consolidated with the Niagara Frontier Port Authority in 1969."  Herzog

Contracting Corp. v. Niagara Frontier Transportation Authority, 1987 WL 4796, *2 (W.D.N.Y.

1987) (Elfvin, J.). "The NFTA is a creature of state statute and is known as a public benefit

corporation. Its aims and purposes are to continue and improve public transportation in Erie

County and Niagara County.  The governing body of the NFTA consists of 'a chairman and ten

other members appointed by the governor by and with the advice and consent of the senate"- viz.,

the Commissioners.' " Grant v. Niagara Frontier Transp. Authority, 1995 WL 319855, *1

(W.D.N.Y. 1995) (Elfvin, J.)[5]; see Rose v. Long Island Railroad Pension Plan, 828 F. 2d 910,

915-17 (2d Cir. 1987), cert. denied, 485 U.S. 936 (1988)(holding that the Metropolitan

---

[4]        This definition applies both to the NLRA and the LMRA. See 29 U.S.C. §142(3).

[5]        While Herzog, supra, concluded that the NFTA was not entitled to sovereign immunity,
this analysis is distinct from the issue of whether the NFTA is a "public employer", a point undisputed by
plaintiff. See Herzog, supra, 1987 WL 4796 at *3 ("The government does not become the conduit of its
immunity in suits against its agents or instrumentalities merely because they do its work.").

Transportation Authority was a political subdivision of New York State).  Because I conclude

that the NFTA is not an "employer" under the LMRA, I recommend that plaintiff's hybrid

§301/fair representation claim be dismissed.

Even if my analysis is incorrect, it appears that plaintiff's hybrid §301/fair

representation claim is also time-barred.  "A six-month statute of limitations applies to hybrid

§301/fair representation claims." Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union

638, 227 F.3d 29, 33 (2d Cir.2000). This limitations period "begins to run when the employee

knew or should have known of the breach of the duty of fair representation." Id. at 34. Plaintiff

filed his DHR complaint on May 3, 2007 alleging that defendant Saleh "refused to assist [him]

with [his] grievance"(Dkt. #15, Reply Affidavit of Susan Wheatley, Esq., Ex. A).  However,

plaintiff failed to file his complaint until more than 6 months later on January 31, 2008.

Therefore, I conclude that plaintiff's hybrid §301/fair representation claim is untimely even if

such a claim were otherwise viable.


**IV.    HIPAA Violations**

Plaintiff's complaint asserts "state law and federal law violations of [*sic*] right to

privacy and confidentiality in medical records" (Dkt. #1, p. 2).  The NFTA argues that the federal

law claim should be dismissed because it is not a covered entity under the Health Insurance

Portability and Accounting Act of 1996 ("HIPAA") and there is no private right of action under

HIPAA  (Dkt. #9, NFTA Memorandum of Law, Point II).  Significantly, plaintiff fails to respond

to this argument.

"HIPAA was enacted to protect the confidentiality of protected health information maintained by covered entities. Covered entities include health plans, health care clearinghouses, and health care providers who transmit health information in electronic format." Del Plato v. Meyeroff, 2008 WL 398547, *3 (W.D.N.Y. 2008) (Schroeder, MJ) (citing 45 C.F.R. §164.500(a) and 42 U.S.C. §1320d-1). By contrast, the NFTA, as plaintiff's employer, is not covered by HIPAA. In any event, it was Dr. Matteliano, plaintiff's own physician, rather than the NFTA, who disclosed plaintiff's medical records without his consent.

Moreover, "even if such a claim was encompassed by HIPAA, case law is consistent that 'HIPAA does not provide a private cause of action, but merely provides an enforcement mechanism for the Secretary of Health and Human Services to enforce the Act.' " Del Plato, supra, *3. Therefore, I recommend that this cause of action be dismissed.


V.    **State Law Claims**

In addition to his federal claims, plaintiff's complaint alleges various corresponding state law claims. However, because I am recommending that plaintiff's federal claims be dismissed, I also recommend that this court decline to exercise pendent jurisdiction over plaintiff's state law claims. "District courts may decline to exercise supplemental jurisdiction over a     claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). " 'In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims.' " Valencia ex rel. Franco v. Lee, 316

-10-

F. 3d 299, 305 (2d Cir. 2003) (quoting <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1988)).

Accordingly, I recommend that plaintiff's remaining state law claims be dismissed,  without prejudice to their maintenance in state court.


**CONCLUSION**

For these reasons, I recommend that defendants' motions to dismiss (Dkt. ##5 and 8) be GRANTED.  Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  <u>See</u>, <u>e.g.</u>, <u>Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.</u>, 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>  <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED**

DATED:        August 6, 2008

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge